**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

UNITED STATES OF AMERICA                                                                         PLAINTIFF

V.                                                                      CAUSE NO. 3:19-CR-107-CWR-LRA-1

JONATHAN LEWIS JENNINGS                                                                        DEFENDANT

**ORDER**

Before the Court are Defendant Jonathan Lewis Jennings' *Motion to Suppress Statements and Physical Evidence*, Docket No. 25, *Motion in Limine to Prohibit Introduction of Certain Evidence*, Docket No. 36, and *Motion for Review of Detention Order*, Docket No. 52, and the Government's *Motion in Limine*, Docket No. 48. The Court will consider each motion in turn.

**I.       Motion to Suppress**

On March 29, 2018, Jennings was interrogated by two state law enforcement officers while incarcerated in Anniston, Alabama: Investigator Matt Thompson of the Anniston Police Department and Detective Thomas Abate with the Meridian, Mississippi Police Department. Prior to beginning his questioning, Detective Abate introduced himself and explained to Jennings that he was there to talk with him about "some things that happened in Meridian." He then advised Jennings of his *Miranda* warnings through an "advice of rights" form that Jennings eventually signed. Docket No. 33-2. This interview was video recorded. The videos have been made a part of the record and the Court has watched them.

The advice of rights form was divided into two parts. The top half of the form included background information, including the suspect's name, level of education, and place of birth, and then a section entitled "YOUR RIGHTS," which provides:

> Before we ask you any questions, you must understand your rights.
> You have the right to remain silent.

> Anything you say can be used against you in court.
> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
> If you cannot afford a lawyer, one will be appointed for you by the court before questioning if you wish.
> If you decide to answer questions now without a lawyer, you still have the right to stop answering at any time.
> You also have the right to stop answering at any time until you talk to a lawyer.

Immediately after these words was a line for the interrogated person and a witness to sign. The bottom section of the form was entitled "WAIVER OF RIGHTS." The section provided:

> I have read this statement of my rights and I understand what my rights are, I do hereby waive all of these rights.
> I am willing to make a statement and answer questions. I do not want a lawyer at this time.
> I understand and know what I am doing.
> No promises have been made to me and no pressure or coercion of any kind has been used against me.

At the beginning of the interrogation, Detective Abate asked Jennings the background questions, such as his level of education. Detective Abate then read the language in the "YOUR RIGHTS" section out loud. He told Jennings that if he understood this section, he needed him to sign. Jennings signed.

Abate then asked Jennings to read the bottom half of the form out loud. When Jennings finished reading the first sentence, "I do hereby waive all of these rights," he said, "I don't know about that part." When he arrived at the word "coercion," Jennings said, "I don't know what that word is." Detective Abate said the word, and Jennings finished reading the section. The detective then asked Jennings if he knew what the word "coercion" meant. When Jennings said he did not, Detective Abate defined the word as follows:

> It means I didn't trick you, force you, to sign this waiver. In order for you to ask me questions and for me to answer any questions and to ask you questions, you

have to waive your rights. Okay? Like I said, it says that you can stop answering questions at any time and ask for a lawyer.

As he finished, Detective Abate – who had a pen – appeared to make an "X" where Jennings was to sign and tells Jennings, "You can sign right there," as he passed the pen. Jennings signed. Detective Abate appeared to sign and date the form as well, said that the time is 9:28 AM, then began the interrogation. The interrogation[1] continued until Jennings said, "I would really like to have a lawyer now." Detective Abate noted that the time was 9:42 AM, that Jennings requested an attorney, and terminated the interview.

Jennings now seeks to suppress both his statements and the video interview. He argues that he did not knowingly and voluntarily waive his *Miranda* rights, contending that (1) he had been in custody in Alabama for several days without the benefit of legal counsel at the time of the interrogation; (2) the officers "softened Jennings up by conversing with him about personal matters"; (3) Detective Abate made promises of leniency after Jennings gave consent; (4) Detective Abate defined "coercion" as saying that "Abate could not give Jennings any information unless Jennings signed the waiver form"; and (5) Jennings had said, "I don't know about that part" after reading "I do hereby waive all of these rights." The Government opposes the motion.

The Fifth and Fourteenth Amendments prohibit compelled self-incrimination. *See United States v. Wright*, 777 F.3d 769, 773 (5th Cir. 2015) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). They require "that custodial interrogation be preceded by advice to the putative

---

[1] The vast majority of the interrogation consisted of Abate talking to Jennings, telling him about the various charges that might be levied against him, the evidence that was in his possession to support those charges, and the consequences Jennings might face if convicted of the charges. At one point Abated said, "Our case is pretty well open and shut." In addition to charges in Mississippi, Jennings would face charges in Alabama and Georgia, Abate explained. If convicted in this case, the real issue would be whether the sentences for any of the convictions would run concurrent or consecutive, in which case he could be in the Mississippi penitentiary for the remainder of his life, said Abate.

3

defendant that he has the right to remain silent and also the right to the presence of an attorney." *Id.* (quoting *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981)). "[U]nder *Miranda*, 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *United States v. Cardenas*, 410 F.3d 287, 292 (5th Cir. 2005). "Once adequate warnings have been given, a suspect may knowingly and intelligently waive his *Miranda* rights and agree to answer questions." *Id.*

> The inquiry whether a valid waiver has occurred has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. The voluntariness determination is made on a case-by-case basis and is viewed under the totality of the circumstances surrounding the interrogation.

*Id.* (citations omitted).

After reviewing the available record in this case, the Court sees nothing in these facts that point to intimidation or coercion, outside of the "inherently coercive" circumstances of a custodial interrogation. *Oregon v. Elstad*, 470 U.S. 298, 305 (1985) (citations omitted). "Softening up" a witness, or encouragement "to cooperate with the government," is a "customary police tactic[]" that does not "constitute such gross intimidation or coercion so as to overcome a defendant's free will and render his statements inadmissible." *Cardenas*, 410 F.3d 287 at 295.

Jennings argues that Detective Abate deceived him when he said that Jennings had to waive his rights for the detective to answer Jennings' questions. At the hearing, Detective Abate conceded that this statement was untrue, specifically he agreed that he could have answered questions regarding the charges Jennings was facing. To invalidate a waiver, however, the deception must pass "the line into the sort of lying that deprives a defendant 'of the knowledge

essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Hopkins v. Cockrell*, 325 F.3d 579, 584 (5th Cir. 2003) (citing *Moran v. Burbine*, 475 U.S. 412, 424 (1986)). That is not the case here. By the time Detective Abate defined coercion, Jennings had confirmed he understood his rights immediately prior to signing the first section of the waiver form. Detective Abate's deception did not go to the "nature" of Jennings rights to remain silent and have an attorney present, nor to the "consequences of abandoning" those rights – namely that "[a]nything you say can be used against you in court."

Under these facts, Jennings' waiver of his *Miranda* rights was valid. Accordingly, his motion to suppress will be denied.

**II.     Motions in Limine**

    **A.     Jennings' Motion in Limine**

Jennings argues that the video interview held on March 29, 2018, should be excluded as irrelevant under Federal Rule of Evidence 401 or, in the alternative, as "unfairly and unnecessarily prejudicial" under Federal Rule of Evidence 403. Jennings also argues that the interview includes inadmissible hearsay that should be excluded under Federal Rule of Evidence 802.

Jennings contends that the video of the interrogation includes a "multitude of circumstances that could very likely prejudice a jury towards finding Mr. Jennings guilty." He points to the fact that he is wearing a correctional uniform and is handcuffed; is silent throughout most of the interrogation and "subsequent[ly] invo[kes] his rights"; and "appears to become emotional." He also takes issue with Detective Abate "describing the various charges, investigations, and troubles that Mr. Jennings is facing in different jurisdictions, many of which are not at issue in this case."

The Court understands Jennings' arguments. The relevance of the interrogation is questionable given that much of the interrogation consists of Detective Abate speaking, with little said by Jennings. The detective also primarily speaks about evidence and alleged charges from different jurisdictions that are not necessarily related to the offense charged. "One of the dangers inherent in the admission of 'other acts' evidence is that the jury might convict the defendant 'not for the offense charged but for the extrinsic offense.'" *United States v. Ridlehuber*, 11 F.3d 516, 521 (5th Cir. 1993) (citation omitted). Taken together with Jennings' dress, the potential for prejudice is possible. Further, some of what Detective Abate discussed in the video is clearly hearsay.

That said, the Government has identified certain statements made by Jennings during the interrogation that may prove relevant at trial, and potential exceptions to the hearsay rule for the out-of-court statements. The Government also suggests that it may be able to alleviate the unfair prejudice by redacting some of the "other acts" discussed that day by Detective Abate. That might be the best course of action.

Accordingly, Jennings' motion will be denied without prejudice to its renewal at trial. Determinations of the relevancy of the testimony and whether certain statements constitute hearsay hinge on the context of the Government's offer of the evidence. Should the Government decide to present the video at trial, it is directed to both redact the video as to Detective Abate's references to extrinsic offenses[2] and prepare a proposed limiting instruction to address the concerns discussed in this subsection of this Order.

---

[2] To the extent the Government intends to use the video in its case-in-chief, it must prepare the redacted video in the form in which it expects to present to the jury. Because this matter will likely be scheduled during the Court's next criminal term, which begins September 8, 2020, the Government shall provide a copy of the redacted video to the Defendant no later than August 1, 2020. If any objections remain, the Defendant shall file them on or before August 17, 2020, and the Court will address those objections at the pretrial conference, which will be scheduled for August 28, 2020.

### B. The Government's Motion in Limine

The Government seeks "an order excluding the testimony of any undisclosed witness regarding the Defendant's alibi pursuant to [Federal Rule of Criminal Procedure] 12.1(e)."

Rule 12.1 allows the prosecutor to "request in writing that the defendant notify an attorney for the Government of any intended alibi defense." Fed. R. Crim. P. 12.1(a)(1) "The request must state the time, date, and place of the alleged offense." *Id.* Upon receipt of such a request, the defendant must "serve written notice on an attorney for the government of any intended alibi defense." *Id.* at 12.1(a)(2). "If a party fails to comply with this rule, the court may exclude the testimony of any undisclosed witness regarding the defendant's alibi." *Id.* at 12.1(e).

In response, Jennings suggests that the Government's alibi demand is deficient, but he cites no relevant law for that contention. Accordingly, the Court will not consider his argument.

Jennings acknowledges receipt of the Government's alibi demand and notes that he has nothing "to report with respect to the identification of any alibi witness, or with respect to any exhibits or other documentary evidence in support of an alibi defense." Accordingly, the Government's motion is granted.

## III. Motion for Review of Detention Order

Jennings is presently detained in the custody of the U.S. Marshals Service. In his final motion, he asks the Court to review Magistrate Judge Linda R. Anderson's order of detention under 18 U.S.C § 3145 or, in the alternative, 18 U.S.C § 3142(i). Docket No. 14. The Court will consider each basis for review.

### A. 18 U.S.C. § 3145

Section 3145 governs whether a Magistrate Judge's order of detention should be amended or revoked. "When the district court . . . acts on a motion to revoke or amend a

magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citation omitted). "Reviewing a transcript of the detention hearing is an appropriate procedure to comply with that obligation." *United States v. Faulkner*, No. 3:09-CR-249-D2, 2010 WL 1541355, at *1 n.2 (N.D. Tex. Apr. 19, 2010); *see also United States v. York*, No. 4:09-CR-36, 2009 WL 1766798, at *1 (N.D. Miss. June 22, 2009).

"Section 3142(g) lists factors the judicial officer considers in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). These include:

> [1] the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug;
>
> [2] the weight of the evidence against the person;
>
> [3] the history and characteristics of the person, including the person's character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> [4] the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.*; *see also* 18 U.S.C. § 3142(g).

The Government has the burden to prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(f)(2)(B). To prove that a defendant "poses a serious risk of flight," the Government must establish as much by a preponderance of the evidence. *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988).

The Court has reviewed the digital audio file of Jennings' July 8, 2019, detention hearing before Judge Anderson, the evidence submitted at the hearing, Judge Anderson's order of detention, and the present briefing. Based on this record, the Government has met its burden on both fronts.

Jennings poses a flight risk given his lack of significant community and family ties to this district, prior failures to appear, and prior probation violations. He would also pose a danger to the community given his significant criminal history of theft, aggravated assault, and burglary. Upon review of the evidence the Government offered at the detention hearing, the Court finds "probable cause to believe that [Jennings] committed an offense under [18 U.S.C. § 924(c)]." Therefore, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" should Jennings be released. 18 U.S.C. § 3142(e)(3). Jennings offered no argument to rebut this presumption at the detention hearing. Accordingly, the Court finds that the order of detention should not be disturbed under 18 U.S.C. § 3145.

**B.      18 U.S.C. § 3142(i)**

Under 18 U.S.C § 3142(i), a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

Jennings contends that the "danger that COVID-19 poses" to him during pretrial detention constitutes a "compelling reason." He argues that he should "be released to the Alabama Department of Corrections where he would be able to observe nationally recognized

9

social distancing protocols that he is unable to follow at the Madison County Detention Center (MCDC)," where he is currently detained for this matter.

Jennings' argument hinges on the assumption that he would be at less risk of catching COVID-19 if incarcerated by the Alabama Department of Corrections (ADOC). He provides no evidence of any difference between the preventive practices at MCDC and those of ADOC. However, he notes that he can testify as to MCDC's lack of compliance with preventive measures and how ADOC has implemented better practices. While relevant, Jennings' testimony alone is insufficient to grant the extraordinary relief of releasing him back into the custody of ADOC – especially given the associated risk of catching COVID-19 that he, United States Deputy Marshals, and Alabama correctional officials would face if he were transported to Alabama, and then again transported back to this district when trial is ready to commence.

Accordingly, this motion is denied.

**IV.     Conclusion**

Jennings' motions are denied as stated. The Government's motion is granted.

**SO ORDERED**, this the 8th day of July, 2020.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE