**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                                          **CAUSE NO. 3:19-CR-107-CWR-LGI-1**

**JONATHAN LEWIS JENNINGS**                                        **DEFENDANT**

**ORDER**

Before the Court is defendant Jonathan Lewis Jennings' Motion to Dismiss due to Speedy Trial Violation. Docket No. 68. After reviewing the motion, procedural history, and the applicable law, the motion is denied.

**I.     Factual and Procedural History**

Jennings was indicted on June 12, 2019, and charged with one count of violating 18 U.S.C. § 922(g), Felon in Possession of a Firearm; two counts of violating 18 U.S.C. § 1951(a), Interference with Commerce by Threat or Violence; and two counts of violating 18 U.S.C. § 924(c), Discharging a Firearm in Relation to a Crime of Violence. On July 8, 2019, Jennings was transferred from the custody of the Alabama Department of Corrections, where he was serving a sentence for Alabama state convictions, to this courthouse for his initial arraignment. He pled not guilty to all counts. That same day, U.S. Magistrate Judge Linda R. Anderson ordered Jennings to be detained without bond until his trial.

Jennings' first trial was set for September 3, 2019. The defense moved for a continuance, which was granted. Jennings' second trial was set for November 4, 2019. Defendant filed a motion to suppress on October 15 and, because the motion would not be ripe for adjudication by the time of the trial, this Court continued the trial to January 6, 2020. The defense then filed another motion to continue because counsel "had too many other cases pending." Docket No. 68 at 2. It too was

granted, and the trial was continued to the March 2020 term. In February 2020, the government moved for a continuance because its two expert witnesses were unavailable. Defendant opposed this motion. This Court held a hearing on the motion and denied it on March 9, 2020. The trial was set to go forward on March 23, 2020.

On March 13, 2020, however, the United States District Court for the Southern District of Mississippi entered its first "Special Order" addressing the coronavirus pandemic. All non-essential proceedings were continued. It was left to each judge's discretion whether a trial was essential or non-essential.[1] This Court continued Jennings' March 23 trial based in part on the Special Order. *See* Docket No. 47.

Since then, *i.e.,* the onset of the coronavirus pandemic, Jennings' trial has been rescheduled numerous times. All of the continuances were pursuant to one of the many Special Orders, though some were elective and others were ordered by this Court citing the ends of justice. For example, one continuance was because Jennings' motion to suppress would not have been ripe by the time of the trial, but also because this Court found that the ends of justice required a continuance.

Throughout the COVID-19 portion of this saga, Jennings has been adamant that he opposed any continuances. *See generally* Docket No. 64. The Court understands that Jennings considers the current period of incarceration to be "dead time" and would prefer to be transferred back to Alabama so that he can continue to serve out his state sentence. His trial is currently scheduled for January 31, 2022.

---

[1] This was the first of several special orders our Court entered to address the pandemic. Through the various orders our Court indicated that the measures implemented would be "re-evaluated based on the then-available information." *See, e.g.*, Special Order, No. 3:40-MC-11, Docket No. 52. Re-evaluation of the circumstances has lead our Court to adopt 16 Special Orders. *Id.* at Docket No. 98. As explained in our most recent Special Order, these orders have been implemented "[t]o protect the public, attorneys, litigants, and those that work in the Southern District of Mississippi[.] [T]he Court has entered fifteen special orders, eight of which . . . curtailed in-court proceedings. Each time, the Court considered, among other factors, the number of reported cases of COVID-19 and the rate at which the virus was spreading." *Id*.

**II.     Legal Standard**

The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right to a speedy … trial . . . ." U.S. Const., amend. VI. To trigger inquiry into whether a violation has occurred, a defendant must allege "presumptively prejudicial" delay. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972). Only then must a court inquire into the so-called *Barker* factors: (1) whether there has been an uncommonly long delay; (2) which party is more to blame for such delay; (3) whether the defendant asserted his right to a speedy a trial; and (4) whether the defendant has suffered actual prejudice by the delay. *See Doggett*, 505 U.S. at 651-52. Alternatively, a court may find that "the first three *Barker* factors weigh so heavily in favor of the defendant that prejudice is presumed." *United States v. Bishop*, 629 F.3d 462, 465 (5th Cir. 2010) (citing *United States v. Frye*, 489 F.3d 201, 209 (5th Cir. 2007)). "If the first three factors do not justify a presumption of prejudice, 'then the defendant bears the burden of establishing actual prejudice and demonstrating that such prejudice is sufficient to outweigh the other three factors.'" *Id.*

Under the Speedy Trial Act, the inquiry into whether a violation has occurred requires at least 70 days to have passed since the defendant's initial appearance or indictment is made public, whichever occurs later. 18 U.S.C. § 3161. Delays attributed to reasons enumerated in subsection (h) are not counted for purposes of the Speedy Trial Act. Of relevant note, one such exclusion

> result[s] from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

*Id.* § 3161(h)(7)(A). "The defendant shall have the burden of proof of supporting such motion" to dismiss for failure to bring the defendant to trial within 70 unexcluded days. *See id.* § 3162(a)(2).

3

## II.     Discussion

### A.     Sixth Amendment Right to a Speedy Trial

Everyone agrees that Jennings has not suffered prejudicial delay based on the amount of time he has spent detained on the present charges. Indeed, he admits that although the "trial has been delayed for more than two years[,]" "this does not trigger a presumption of prejudice[.]" Docket No. 68 at 11. The Government agrees, Docket No. 70 at 6, and so does this Court. This is consistent with the Fifth Circuit's general principle "that delays of less than five years are insufficient, by duration alone, to give rise to a presumption of prejudice and relieve the defendant of satisfying *Barker*'s fourth prong." *United States v. Bishop*, 629 F.3d 462, 466.

Still, Jennings argues that all four *Barker* factors weigh in favor of dismissal. This is not so.

First, Jennings has not suffered an uncommonly long delay. Unfortunately, the COVID-19 pandemic brought jury trials to an abrupt halt. That is especially true for jury trials like Jennings', which require several weeks and involve multiple fact and expert witnesses, including some traveling internationally, at one point. In fact, because of the pandemic, one witness was barred from leaving foreign soil to return to the United States. Second, Jennings cites the "dangers associated with the Pandemic" as the reason for delay but then argues that "the court has had several opportunities to safely try this case over the past two years." Docket No. 68 at 11. Again, the length of time required for Jennings' case, as well as the number of witnesses differentiates his case from others. Jennings acknowledges this, stating that though other trials have been held in this jurisdiction, "those trial[s] were anticipated to be shorter[.]" *Id.* at 7-8. The third factor does weigh in favor of dismissal as Jennings has repeatedly asserted his right to a speedy trial. This

alone, however, does not give rise to a presumption of delay, which requires the first three factors to weigh heavily in favor of dismissal. *See Bishop*, 629 F.3d at 465.

To overcome the lack of prejudicial delay, Jennings must establish actual prejudice. *Bishop*, 629 F.3d at 465 ("If the first three factors do not justify a presumption of prejudice, 'then the defendant bears the burden of establishing actual prejudice and demonstrating that such prejudice is sufficient to outweigh the other three factors.'"). Jennings' only claim, that he has been denied some unspecified rehabilitative programming he would receive while serving his state sentence with the Alabama Department of Corrections, Docket No. 68 at 11, does not amount to prejudice. Accordingly, Jennings has suffered neither presumptively prejudicial delay nor actual prejudice, and thus, no Sixth Amendment violation has occurred. *See Doggett*, 505 U.S. at 651-52; *United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009).

### B.     Speedy Trial Act

Jennings' Speedy Trial Act claim fails because he has not met the threshold requirement of 18 U.S.C. § 3161, demonstrating that 70 days, not subject to exclusion, have passed since his initial appearance. Jennings argues that prior to his first scheduled trial and the corresponding continuance, 30 days ran on the Speedy Trial clock. Docket No. 68 at 2. Then, at the conclusion of the motion, Jennings claims that "[t]he 'ends of justice' continuance was granted over Mr. Jennings' objection more than 70 days ago." Docket No. 68 at 8. The "ends of justice" continuances, however, are excludable.

Specifically, on March 13, 2020, the President of the United States declared a national emergency regarding the coronavirus pandemic. *See* Presidential Proclamation 9994. That same day, the Southern District of Mississippi's Chief Judge Daniel P. Jordan III issued the Court's first Special Order, *see* No. 3:40-MC-11, Docket No. 52. In it, the Court continued all non-essential

5

civil and criminal matters. Only initial appearances, arraignments, detention hearings, and issuance of warrants, were categorically deemed essential. *Id.* Whether other matters were essential or non-essential was left to the discretion of the presiding judge. *Id.* The Special Order also noted that all continuances implemented under the direction of the Order, were excluded under the Speedy Trial Act, 18 U.S.C § 316(h)(7)(A). The Southern District of Mississippi proceeded to issue additional Special Orders throughout 2021 and 2022, extending the continuances and explicitly citing the need to provide for a safe environment for trials as its reason for excluding the delays from the Speedy Trial Act. *See, e.g.,* No. 3:40-MC-11, Docket Nos. 60, 61, 63, & 66.

Accordingly, the "ends of justice" continuances were excluded from the Speedy Trial Act clock, and Jennings has not and cannot show that more than 70 days, not subject to exclusion, have passed since his initial appearance. Thus, he is not eligible for relief under the Speedy Trial Act.

### III.    Conclusion

The Court will do all in its power to see that Jennings' trial goes forward as soon as practicable. Additionally, upon the appropriate motion, the Court is willing to reconsider whether Jennings should be returned to the custody of the Alabama Department of Corrections to serve his state sentence until his federal trial can go forward safely. For present purposes, though, the motion to dismiss must be denied.

**SO ORDERED**, this the 19th day of January, 2022.

> s/ Carlton W. Reeves
> UNITED STATES DISTRICT JUDGE